IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

DWIGHT T. CHAMPION,

     Petitioner,

v.                                       No. 1:23-cv-01123-JDB-jay

WARDEN TAUREAN JAMES,

     Respondent.

ORDER MODIFYING THE DOCKET;
GRANTING MOTION TO DISMISS THE § 2254 PETITION (D.E. 21);
DENYING THE PETITION PURSUANT TO 28 U.S.C. § 2254 (D.E. 1);
DENYING A CERTIFICATE OF APPEALABILITY;
CERTIFYING THAT AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH; AND
DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

On June 20, 2023, Petitioner, Dwight T. Champion, Tennessee Department of Correction

("TDOC") prisoner number 287093, an inmate incarcerated at the Turney Center Industrial

Complex[1] in Only, Tennessee, filed a pro se petition under 28 U.S.C. § 2254 for a writ of habeas

corpus by a person in state custody ("§ 2254 Petition").  (Docket Entry ("D.E.") 1; *see also id*. at

PageID 14 (attesting that Champion placed the § 2254 Petition in the prison mail system on June

20, 2023).)  On July 27, 2023, Petitioner paid the filing fee.  (D.E. 5.)  On February 6, 2025, the

Court directed Respondent to file the state court record and respond to the § 2254 Petition.  (D.E.

7.)  On April 7, 2025, Respondent filed the index of the state court record, (D.E. 14 at PageID 120-

25), and the state court record.  (D.E. 14-1-D.E. 14-21).  On May 8, 2025, the Court granted

---

[1] When Champion filed his § 2254 Petition, he was incarcerated at Whiteville Correctional Facility in Whiteville, TN.  (Docket Entry ("D.E.") 1.)  According to the TDOC Felony Offender Information Search, he is currently incarcerated at Turney Center Industrial Complex ("TCCX"), in Only, Tennessee.  *See* TDOC Felony Offender Information website, https://foil.app.tn.gov/foil/search_additional.jsp (prisoner identification number 00287093) (last accessed Dec. 30, 2025).

Respondent's third motion for extension of time to respond. (D.E. 20.) On May 13, 2025, Respondent filed a motion to dismiss the § 2254 Petition "because it is untimely without excuse." (D.E. 21 at PageID 922.) (D.E. 21 (Motion to Dismiss) and D.E. 21-1 (Memorandum of Law in Support) are referred to collectively as the "MTD.")

The Clerk is DIRECTED to record the Respondent as Warden Taurean James and to terminate Christopher Brun as a party to this action. (*See* D.E. 7 at PageID 109 n.2); *see also* Fed. R. Civ. P. 25(d); *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004).

Before the Court is the MTD. (D.E. 21; D.E. 21-1). For the reasons stated below, the MTD (D.E. 21; D.E. 21-1) is GRANTED, and the § 2254 Petition (D.E. 1) is DENIED WITH PREJUDICE as time barred.

I.    PROCEDURAL HISTORY

A.  State Court Procedural History

On May 1, 2018, a grand jury in Madison County, Tennessee returned an indictment charging Champion and co-defendant Lena Virginia Cole with: (1) possession with intent to sell or deliver 0.5 grams or more of cocaine, a Schedule II controlled substance, in counts one and two; (2) simple possession of marijuana, a Schedule VI controlled substance, in count three; and (3) possession with intent to use drug paraphernalia in count four. (D.E. 14-6 at PageID 441-45); *see also State v. Champion*, No. W2019-00230-CCA-R3-CD, 2020 WL 504826, at *1 (Tenn. Crim. App. Nov. 5, 2019) ("*Champion I*").

Following trial, (D.E. 14-1; D.E. 14-2; D.E. 14-3), a Madison County, Tennessee jury found Champion guilty, on October 31, 2018, of: (1) facilitation of criminal attempt of possession of cocaine with intent to sell, in count one; (2) facilitation of criminal attempt of possession of cocaine with intent to deliver, in count two; and (3) simple possession of marijuana, in count three. (D.E. 14-6 at PageID 529-38); *see also Champion I*, 2020 WL 504826, at *1. The jury was unable

to reach a verdict on count four and a nolle prosequi was entered on that count. (D.E. 14-6 at PageID 539); *see also Champion I*, 2020 WL 504826, at *1. The trial court: (1) merged counts one and two; and (2) pursuant to an agreement with the State, sentenced Champion as a Range III career offender to (a) twelve years in the TDOC with a sixty percent release eligibility for merged counts one and two and (b) eleven months and twenty-nine days with a seventy-five percent release eligibility for count three, to be served concurrently to counts one and two—for a total effective sentence of twelve years at sixty percent. *Champion I*, 2020 WL 504826, at *1. Judgment was entered on December 17, 2018. (D.E. 14-6 at PageID 570-73.) On January 14, 2019, the trial court denied Champion's motion for new trial or acquittal. (D.E. 14-8 at PageID 619-26); *see also Champion I*, 2020 WL 504826, at *1.

On July 22, 2019, Champion, represented by a public defender, filed a direct appeal to the Tennessee Court of Criminal Appeals ("TCCA"), arguing that the evidence was insufficient to support his convictions. (D.E. 14-9 at PageID 628, 632); *see also Champion I*, 2020 WL 504826, at *1. On January 30, 2020, the TCCA affirmed the judgment of the trial court. *See Champion I*, 2020 WL 504826, at *1; (*see also* D.E. 14-11 at PageID 669-78.) On June 5, 2020, the Tennessee Supreme Court (the "TSC") denied Champion's application for discretionary review. (D.E. 14-13 at PageID 707.) Champion did not file a petition for a writ of certiorari to the United States Supreme Court.

Giving Petitioner the benefit of the doubt, the Court construes June 2, 2021, as the date Champion gave his pro se petition for post-conviction relief, (D.E. 14-16 at PageID 789-93 ("PCR Petition")), to prison authorities for mailing to the post-conviction trial court. (*See id*. at PageID 793 (Petitioner's signature page of the PCR Petition, attesting that he gave it to prison officials on June 2, 2021).) The PCR Petition bears a file-stamp by the post-conviction trial court dated June 8, 2021, (*id.* at PageID 789), suggesting that the court received the PCR Petition shortly after the

prisoner gave it to prison personnel for mailing on June 2, 2021. *See* Tenn. Sup. Ct. R. 28, § 2(G) (codifying the prison mailbox rule in post-conviction cases).[2] In the PCR Petition, Champion alleged that trial counsel was ineffective because he failed to: file a motion to suppress; interview one of the State's witnesses; investigate the precise location of a black plastic bag containing drugs found outside the home; cross-examine one of the State's witnesses; and file a motion to sever Champion's trial from that of his co-defendant. (D.E. 14-16 at PageID 792, 794-98); *see also Champion v. State*, No. W2021-01392-CCA-R3-PC, 2022 WL 4242901, at *1 (Tenn. Crim. App. Sept. 15, 2022) ("*Champion II*"). On November 2, 2021, Petitioner filed an amended petition for post-conviction relief, following the appointment of counsel. (D.E. 14-16 at PageID 816-17 ("Amended PCR Petition").)

The post-conviction court held a hearing in which the inmate and trial counsel testified. *See Champion II*, 2022 WL 4242901, at *2; (*see also* D.E. 14-14 at PageID 708-67.) On February 28, 2022, the post-conviction trial court denied post-conviction relief. (D.E. 14-16 at PageID 825-26.) On March 22, 2022, Champion appealed the denial of relief. (D.E. 14-17 at PageID 828.) On September 15, 2022, the TCCA affirmed the denial of post-conviction relief. *Champion II*, 2022 WL 4242901, at *1, *7; (*see also* D.E. 14-19 at PageID 871-81.) On October 17, 2022, Champion applied for discretionary review with the TSC. (D.E. 14-20 at PageID 882-89.) On December 14, 2022, the TSC denied Champion's application. (D.E. 14-21 at PageID 903.)

B. The MTD

On May 13, 2025, Respondent filed the MTD pursuant to Rules 4, 5, and 12 of the Rules Governing § 2254 Cases in the United States District Courts, arguing that the § 2254 Petition "is

---

[2] *See also Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (recognizing the "relaxed filing standard" under which a pro se prisoner's submission "is deemed filed when it is handed over to prison officials for mailing to the court," and explaining that "[c]ases expand the understanding of this handing-over rule with an assumption that, absent evidence to the contrary, a prisoner does so on the date he or she signed the [filing]").

untimely without excuse." (D.E. 21 at PageID 922; D.E. 21-1 at PageID 924.)  Champion did not

submit a response in opposition to the MTD.  The period for filing a response has expired. (*See*

D.E. 7 at PageID 110.)

II.     ANALYSIS

A.  The § 2254 Petition Is Untimely

A one-year statute of limitations applies to the filing of a petition for a writ of habeas corpus

"by a person in custody pursuant to the judgment of a State court."  28 U.S.C. § 2244(d)(1).  In

this case, the running of the limitations period commenced on "the date on which the judgment

became final by the conclusion of direct review or the expiration of the time for seeking such

review."  *Id.* § 2244(d)(1)(A).  State convictions ordinarily become "final" when the time expires

for filing a petition for a writ of certiorari from a decision of the highest state court on direct appeal.

*See Pinchon v. Myers*, 615 F.3d 631, 640 (6th Cir. 2010); *Sherwood v. Prelesnik*, 579 F.3d 581,

585 (6th Cir. 2009).

Here, the TCCA affirmed Champion's convictions and sentences on January 30, 2020,

*Champion I*, 2020 WL 504826; (D.E. 14-11 at PageID 669-78), and the TSC denied permission to

appeal on June 5, 2020.  (D.E. 14-13 at PageID 707.)  Champion's conviction became final upon

the expiration of his time to file a petition for a writ of certiorari with the United States Supreme

Court, which occurred on Thursday, September 3, 2020—i.e., ninety days after the TSC denied

discretionary review on June 5, 2020.  (*Id.*); *see* Sup. Ct. R. 13.1 (requiring petition for writ of

certiorari to be filed with the Clerk of the United States Supreme Court within ninety days after

entry of order denying discretionary review).  The running of the § 2254 limitations period

commenced on Friday, September 4, 2020.

The habeas limitations period statute provides that "[t]he time during which a properly

filed application for State post-conviction or other collateral review with respect to the pertinent

judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). Here, the running of the limitations period was tolled when Champion filed his pro se PCR Petition on June 2, 2021. (*See* D.E. 14-16 at PageID 793); *see also* Tenn. Sup. Ct. R. 28, § 2(G); *Brand*, 526 F.3d at 925. By that date, 271 days of the one-year § 2254 limitations period had elapsed.

On September 15, 2022, the TCCA affirmed denial of post-conviction relief. *Champion II*, 2022 WL 4242901, at *1, *7; (*see also* D.E. 14-19 at PageID 871-81.) On December 14, 2022, the TSC denied Champion's application for discretionary review. (D.E. 14-21 at PageID 903.) Petitioner's federal habeas limitation period re-commenced on December 15, 2022. *See Taylor v. Palmer*, 623 F. App'x 783, 786 (6th Cir. 2015) (citing 28 U.S.C. § 2244(d)(2), which states that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is *pending* shall not be counted toward any period of limitation under this subsection" (emphasis added)). The limitations period expired ninety-four days later—on Monday, March 20, 2023.[3]

Champion filed his § 2254 Petition with the Court on June 20, 2023. (D.E. 1 at PageID 14 (attesting that Champion placed his § 2254 Petition in the prison mail system on that date).) *See Houston v. Lack*, 487 U.S. 266, 270, 276 (1988) (holding that prison mailbox rule applies to federal habeas petitions). June 20, 2023, was ninety-two days after the March 20, 2023, expiration of the § 2254 limitations period. Thus, the § 2254 Petition (D.E. 1) was not timely filed.

B. Equitable Tolling and Gateway Actual Innocence Doctrines Do Not Apply Here

1. Equitable Tolling

---

[3] Ninety-four days after December 15, 2022, was Sunday, March 19, 2023. Therefore, the limitations period expired on the next business day, Monday, March 20, 2023. *See* Fed. R. Civ. P. 6(a)(1)(C) ("[I]f the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.").

"The doctrine of equitable tolling allows courts to toll a statute of limitations when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010) (internal quotation marks omitted). The § 2244(d)(1) limitations period is subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 645 (2010). "[T]he doctrine of equitable tolling is used sparingly by federal courts." *Robertson*, 624 F.3d at 784. "The party seeking equitable tolling bears the burden of proving he is entitled to it." *Id.* (citation omitted). A habeas petitioner is entitled to equitable tolling "if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 560 U.S. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *see also id.* at 653 ("The diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" (citation and additional internal quotation marks omitted)).

Champion does not mention equitable tolling in the § 2254 Petition. (D.E. 1; D.E. 1-1; D.E. 1-2; D.E. 1-3.) As explained below, nothing in the record demonstrates Champion's entitlement to equitable tolling.

a.    Reasonable Diligence

Petitioner does not argue that he was reasonably diligent in pursuing his federal habeas rights. (*See* D.E. 1; D.E. 1-1; D.E. 1-2; D.E. 1-3.) Though Champion inquired about the status of his state court proceedings, (D.E. 1-5 at PageID 95, 97; D.E. 1-6 at PageID 98), he was not timely in doing so. The inmate waited until May 9, 2023, to ask the Clerk of the TSC about his application for permission to appeal, although he knew his application was filed in October 2022. (D.E. 1-5 at PageID 97; D.E. 1-4 at PageID 94.) Champion initiated his belated inquiry in May 2023—i.e., approximately seven months after his October 2022 application to the TSC was filed, and five months after the application was denied in December 2022. By the time of his May 9, 2023,

7

inquiry, the March 20, 2023, statute of limitations on the § 2254 Petition had already expired. And while the inmate claims to have reached out to his attorney regarding his case status "several times since December of 2022 up until May 2023," (D.E. 1-3 at PageID 93), the fact he took matters into his own hands in May 2023 shows that he could have done so all along. Indeed, his letter to the Clerk of the TSC was on a form letter designed for inquiries just like Champion's. (D.E. 1-5 at 97.) His unjustified delay belies reasonable diligence. *See*, *e.g.*, *Brown v. Adams*, No. 21-5817, 2022 WL 3910513, at *2 (6th Cir. Aug. 25, 2022) (concluding that the petitioner, who "did not inquire about his motion for discretionary review until […] 21 months later," was not reasonably diligent and therefore was not entitled to equitable tolling); *Robinson v. Easterling*, 424 F. App'x 439, 443 (6th Cir. 2011) (holding that the petitioner, who waited approximately eighteen months to make any inquiries about his case status, was not entitled to equitable tolling as he did not act with reasonable diligence (citing cases)).

b.     Extraordinary Circumstances

Champion says that his post-conviction appellate attorney did not inform him that the TSC denied his application for permission to appeal. (D.E. 1-3 at PageID 93.) Under well settled law, Petitioner fails to demonstrate that he suffered extraordinary circumstances prohibiting the timely filing of the § 2254 Petition.

Under the Sixth Circuit's interpretation of *Holland*, counsel's silence following the end of state post-conviction review falls well short of the extraordinary circumstances required for equitable tolling entitlement:

> *Maples* [*v. Thomas*, 565 U.S. 266 (2012)[4]] does not establish that a failure to communicate by itself will always be sufficient to establish abandonment. To the

---

[4] In *Maples*, two attorneys from a New York firm represented an Alabama capital inmate pro bono in state post-conviction proceedings. 565 U.S. at 270. The attorneys wrote and filed the inmate's initial post-conviction petition, then moved to another law firm which prohibited them from continuing their representation in the case. *Id*. Though the petition was pending in the state trial court, the attorneys did not inform the petitioner or the court and did not attempt to withdraw as counsel. *Id*. at 270-71. After the post-conviction petition was denied, the petitioner lost the ability to timely appeal because his attorneys of record did not act and he did not receive notice. *Id*. at 271. As a

8

> contrary, the facts in *Maples* and *Holland* indicate a higher bar for abandonment.
> In both cases, the Court credited a whole host of attorney misconduct—only one
> element of which was some form of deficient communication—that gave rise to a
> severance of the agency relationship and the ultimate finding of abandonment.

*Young v. Westbrooks*, 702 F. App'x. 255, 264-65 (6th Cir. 2017).

Lack of communication, though, is all Champion alleges—not a "whole host of attorney misconduct," as is required to demonstrate abandonment. *See id.* at 265. Petitioner acknowledges that his attorney filed the application for permission to appeal and Champion attaches counsel's letter notifying him of this filing. (D.E. 1-3 at PageID 93; D.E. 1-4 at PageID 94.) As the Sixth Circuit in *Young* determined: "[N]o [] court of appeals has held that a lawyer abandons his client despite filing a brief on his behalf." *Young*, 702 F. App'x. at 265. The *Young* court refused to "be the first" to do so and therefore declined to find abandonment by counsel. *Id.* The failure by Champion's post-conviction counsel to inform him that his post-conviction proceedings had concluded "does not approach the grievous failings of the attorney in *Holland*." *See Hunter v. United States*, No. 3:10–cv–343, 2013 WL 4780918, at \*5 (E.D. Tenn. Sept. 5, 2013) ("[T]he failure to inform petitioner that the Supreme Court had denied issuance of a writ of certiorari was the kind of garden variety excusable neglect which binds petitioner to his counsel's oversight. Such conduct does not constitute an extraordinary circumstance and does not call for equitable tolling.").

In addition, Champion does not contend that his attorney acted inconsistently with any assurance given to the inmate. (*See* D.E. 1; D.E. 1-1; D.E. 1-2; D.E. 1-3; *see also* D.E. 1-4 at PageID 94 (containing counsel's letter to Champion informing him that his application for permission to appeal was filed, in which counsel stated "[t]he Supreme Court will advise as to

---

result, his subsequent federal habeas petition was denied because of the failure to appeal in state court. *Id.* Under these "extraordinary facts" of counsel abandoning a capital petitioner's case during the first stage of post-conviction review, the Supreme Court excused the default. *Id.*

9

whether they intend to accept your case," and made no assurances regarding continued representation, further filings, or future notice of the TSC's decision).)  In any event, the Sixth Circuit has concluded that attorney behavior contradicting assurances given to clients is not egregious, absent further neglect.  Champion demonstrates neither contradictory behavior nor neglect by counsel.  (D.E. 1; D.E. 1-1; D.E. 1-2; D.E. 1-3); *see Washington v. Saad*, No. 18-6347, 2019 WL 7372700, at *2 (6th Cir. June 20, 2019) (holding that where the petitioner "merely asserted that his counsel 'assured [his client] that he would be filing a post-conviction motion encouraging [his client] to rely on those assurances' and 'failed to meet a basic standard of professional conduct when he allowed the federal limitations period to expire,'" the petitioner's "conclusory allegations failed to establish that his counsel's conduct rose to the level of an extraordinary circumstance").

Furthermore, once the TSC denied permission to appeal, Champion's post-conviction proceedings were over.  Post-conviction counsel's representation in state court proceedings had concluded.  Petitioner makes no allegation that either he or counsel contemplated representation in federal habeas proceedings.  (D.E. 1; D.E. 1-1; D.E. 1-2; D.E. 1-3.)  He has "presented no evidence that [his attorney] deliberately ignored requests at communication or misadvised him." *See Patterson v. Lafler*, 455 F. App'x 606, 611 (6th Cir. 2012); (*see also* D.E. 1-3 at PageID 93.) Champion fails to show that extraordinary circumstances prohibited timely filing of the § 2254 Petition.

For these reasons, the inmate does not demonstrate extraordinary circumstances or reasonably diligent pursuit of his habeas rights, so he is not entitled to equitable tolling.

2.  Gateway Actual Innocence

Champion argues he is "actual[ly] innocen[t]."  (D.E. 1-3 at PageID 92; D.E. 1 at PageID 13.)  Actual innocence, if proved under the standard applied in *Schlup v. Delo*, 513 U.S. 298

(1995), serves as a gateway through which a petitioner may obtain review of his otherwise barred or untimely claims of constitutional violation.  *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013).  To open the gateway, a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. He must also show that, in light of the new evidence, "it is more likely than not that no reasonable juror would have convicted him." *Id.* at 327.  The standard for gateway actual innocence claims is "demanding." *McQuiggin*, 569 U.S. at 386 (quoting *House v. Bell*, 547 U.S. 518, 538 (2006)). "[T]enable actual-innocence gateway pleas are rare." *Id*. at 386, 394-95 (describing that gateway actual innocence "applies to a severely confined category"); *Souter v. Jones*, 395 F.3d 577, 588 (6th Cir. 2005) ("[T]he actual innocence exception should remain rare and only be applied in the extraordinary case." (internal quotations and citation omitted)).  "The gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *McQuiggin*, 569 U.S. at 401 (quoting *Schlup*, 513 U.S. at 316.)

The inmate argues the § 2254 Petition's untimeliness is excused by the actual-innocence exception. (D.E. 1 at PageID 13.)  He contends his actual-innocence claim is supported by ground ten of the § 2254 Petition, in which he alleges that trial counsel was "ineffective for failing to investigate the policies and procedures of the Madison County Narcotic Division, the Madison County Police Department, and the Sheriff's Department to adequately prepare a defense." (D.E. 1 at PageID 13, 55-57; D.E. 1-3 at PageID 91-93 ("Ground Ten").)  In Ground Ten, Champion contends that law enforcement failed to follow proper procedures because detectives spoke with neighbors, did not conduct lab tests on evidence, and did not submit body camera footage. (D.E. 1 at PageID 56.)  Champion "avers" that counsel's purported failure left exculpatory evidence

undiscovered. (*Id.*) He further claims that law enforcement engaged in "domestic terrorism or treason" and targeted Petitioner "because of the color of his skin." (*Id.*) He "avers that this ground alone should . . . support a decision of actual innocence." (*Id.* at PageID 57.)

The inmate's gateway actual innocence argument is not plausible. He presents no new evidence from which this Court could assess credibility and determine that it merits review under *Schlup* and *McQuiggin*. Throughout the § 2254 Petition, Champion takes issue with the legal sufficiency of the evidence used to convict him, the procedures used to obtain it, and counsel's alleged failure to discover additional evidence. (*See generally* D.E. 1; D.E. 1-1; D.E. 1-2; D.E. 1-3.) But nowhere does Petitioner point to any proof that he is innocent. He merely restates the same complaints about law enforcement and counsel he raised throughout the state-court review process. (*See, e.g.*, D.E. 1-1 at PageID 78-82; D.E. 14-9 at PageID 634-41; D.E. 14-12 at PageID 685-92; D.E. 14-16 at PageID 794-98; D.E. 14-17 at PageID 835-37; D.E. 14-20 at PageID 887-88.) By failing to offer any new evidence, Champion falls short of *McQuiggin*'s requirement that he "demonstrate that he *factually* did not commit the crime." *See Hubbard v. Rewerts*, 98 F.4th 736, 743 (6th Cir. 2024) ("[A] petitioner may not pass through the equitable gateway by simply undermining the state's case. Rather, he must demonstrate that he *factually* did not commit the crime" (emphasis in original)). Champion does not open an actual-innocence gateway.

Because the § 2254 Petition is untimely and Champion is not entitled to equitable tolling, the § 2254 Petition is time barred. Respondent's MTD (D.E. 21; D.E. 21-1) is GRANTED, and the § 2254 Petition (D.E. 1) is DISMISSED WITH PREJUDICE. The Clerk is DIRECTED to enter judgment for Respondent.

III.    APPELLATE ISSUES

There is no absolute entitlement to appeal a district court's denial of a § 2254 petition. *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003); *Bradley v. Birkett*, 156 F. App'x 771, 772 (6th

Cir. 2005).  The Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2254 petitioner.  Rule 11(a), Rules Governing § 2254 Cases.  A petitioner may not take an appeal unless a circuit or district judge issues a COA.  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).

A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right, and the COA must indicate the specific issue or issues that satisfy the required showing.  28 U.S.C. §§ 2253(c)(2)-(3).  A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 336 (internal quotation marks omitted); *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same).  A COA does not require a showing that the appeal will succeed.  *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814-15 (6th Cir. 2011) (quoting *Miller-El*, 537 U.S. at 337).  Courts should not issue a COA as a matter of course.  *Bradley*, 156 F. App'x at 773 (quoting *Miller-El*, 537 U.S. at 337).

In this case, there can be no question that the § 2254 Petition is time barred.  Because any appeal by Petitioner on the issues raised in his § 2254 Petition does not deserve attention, the Court DENIES a certificate of appealability.

Rule 24(a)(1) of the Federal Rules of Appellate Procedure provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit.  However, if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in forma pauperis, the prisoner must file his motion to proceed in forma pauperis in the appellate court.  *See* Fed. R. App. P. 24(a)(4)-(5).  In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal

13

would not be taken in good faith.  It is therefore CERTIFIED, pursuant to Federal Rule of

Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith, and

leave to appeal in forma pauperis is DENIED.[5]

    IT IS SO ORDERED this 8th day of January 2026.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

---

[5] If Petitioner files a notice of appeal, he must pay the full $605.00 appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days of the date of entry of this Order.  *See* Fed. R. App. P. 24(a)(5).